11/11/2014 10:19:31 PM
Chris Daniel - District Clerk Harris County
Envelope No. 3142571
By: Nelson Cuero
Filed: 11/11/2014 10:19:31 PM

**CAUSE NO. _____**

| | | |
|---|---|---|
| **TRYALL OMEGA, INC. and TRYALL, INC.** | § | **IN THE DISTRICT COURT** |
| | § | |
| | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **V.** | § | |
| | § | |
| **GULF COAST MINERAL, LLC, GARY BILLINGSLEY AND GENESIS ENERGY, LLC** | § | **HARRIS COUNTY, TEXAS** |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| *Defendant.* | § | **_____JUDICIAL DISTRICT** |

## PLAINTIFF'S ORIGINAL PETITION AND APPLICATION FOR TEMPORARY RESTRAINING ORDER AND REQUEST FOR TEMPORARY INJUNCTION

**TO THE HONORABLE JUDGE OF SAID COURT:**

TRYALL OMEGA, INC. ("TOI") and TRYALL, INC. ("TI") (collectively "**Plaintiffs**"), file their Original Petition and Application for Temporary Restraining Order and Injunctive Relief against GULF COAST MINERAL, LLC. ("GCM"), GARY BILLINGSLEY ("Billingsley") and GENESIS ENERGY, LLC ("Genesis") (collectively "**Defendants**"). TOI, TI, GCM, Billingsley and Genesis are each referred to herein as a "Party" and referred to collectively herein as the "Parties". Plaintiffs, for cause would respectfully show this Honorable Court the following:

### I.
### DISCOVERY CONTROL PLAN LEVEL

1. In accordance with Tex. R. Civ. P. 190, discovery is intended to be conducted under Level 2.

### II.
### REQUEST FOR DISCLOSURE

2. Pursuant to Rule 194 of the Texas Rules of Civil Procedure, Defendants are requested to disclose the information and material described in Rule 194.2 **within fifty days** of services of

*Plaintiffs' Original Petition and Application for TRO and Injunction*

1

Certified Document Number: 63136871 - Page 1 of 17

EXHIBIT A

this request at the office of the undersigned.

## III.
## IDENTIFICATION OF PARTIES AND SERVICE

3. Plaintiff **TRYALL OMEGA, INC.** is a Texas corporation whose principal place of business is Harris County, Texas.

4. Plaintiff, **TRYALL, INC..** is a Texas corporation whose principal place of business is Harris County, Texas. Plaintiffs who by and through their attorney, allege that the following herein are DEFENDANTS at this time, although Plaintiffs reserve the right and privilege to bring additional and/or supplemental claims against any other parties, whether named or not as of the date of this pleading is filed.

5. Defendant, **GULF COAST MINERAL, LLC**,  is an Alabama limited liability company whose principal place of business is **109 E. 14th Avenue, Gulf Shores, AL 36542,** Covington, County, Alabama. Defendant GCM may be served with process through its registered agent, Patricia Billingsley, spouse of Gary Billingsley. GCM may be served with process as follows:

**GULF COAST MINERAL, LLC.**
By and through its Registered Agent: Patricia A. Billingsley
302 W. 8th Street
Gulf Shores, AL 36542 USA,

6. Defendant, **GARY BILLINGSLEY**, is a resident citizen of Gulf Shores, Alabama, and is over the age of 18 years. Billingsley may be served with process as follows:

**GARY BILLINGSLEY,**
302 W. 8th Street
Gulf Shores, AL 36542 USA
(Or where ever he may be found)

7. Defendant, **GENESIS ENERGY, LLC**, is Delaware limited liability company that is also registered with the Texas Secretary of State as a foreign limited liability company, with its principal location of business located at **919 Milam Street, Suite 2100, Houston, Texas 77002**. Plaintiff has reason to believe that GENESIS ENERGY, LLC operates as the General Partner of Genesis Energy, L.P. and is an independent gatherer and marketer of crude oil in Texas  and Alabama. Genesis may be served with process through its registered agent **Karen N. Pape**, 919 Milam Street, Suite 2100, Houston, TX 77002.

Certified Document Number: 63136871 - Page 2 of 17

8. The **INTEREST,** which is the subject matter of this litigation is a 49% working interest in the wells, leases and minerals as extracted and accountings arising out of the sale at the wellhead in a 640 acre unit in the Pleasant Home Field in Covington County, Alabama purchased by TOI from GCM on February 23, 2013 for $735,000.00 and secured by certain liens and subject to a certain Joint Operating Agreement ("JOA") dated June 26, 2008 between GCM, as Operator and MARC et al, as Non-Operator, A.A.P.L. FORM 610-1982. TI, through its wholly-own subsidiary, TOI currently hold the INTEREST, and has done so throughout the existence of a mortgage with GCM, wrongful foreclosure notices, and TOI's voluntary reorganization in the Southern District of Texas Bankruptcy Court in 2014 due to GCM's efforts to subject TOI to operating losses and extort the only producing well in the Pleasant Home Field.

9. The **INTEREST** is more particularly described as:

  a. An undivided 49% of 8/8ths working interest which is NRI of 36.61% with a corresponding 49% of 8/8ths net revenue interest in and to the entire estates created by the oil, gas and mineral leases described in **EXHIBIT A,** attached to an made a part hereof for all purposes (the "Leases") and the lands covered thereby (the "Lands"), together with all property and rights incident thereto, to the extent the same relate directly to the Leases and Lands and are assignable or partially assignable, including all such rights in, to, and under all agreements, product purchase and sale contracts, leases, permits, rights-of-way, easements, licenses, farmouts, options and orders directly relating thereto; Subject to a combined royalty and overriding royalty burden of 25.269196% leaving a net revenue interest of 74.730804%.

  i. An undivided 49% of 8/8ths interest in and to the wells described in **EXHIBIT B,** attached to and made a part hereof for all purposes (the Wells") along with the wellbores, fixtures, equipment and other property, both real and personal, that are used or held for use in connection with the Leases, Lands and Wells, appurtenant thereto, or directly used or held for use in connection with the Leases, Lands and Wells, or with the production, treatment, sale, or disposal of hydrocarbons or waste produced therefrom or attributable

thereto;

ii.   An undivided 49% of 8/8ths working interest with a corresponding 49% of 8/8ths net revenue interest in and to all unitization, pooling and operating agreements and the units created thereby, including any and all units formed under orders, regulations rules and other official acts of any governmental authority having requisite jurisdiction, together with the same percentage of right, title and interest created thereby in the Lands, insofar only to the extent the same relate directly to the Leases and Lands and are assignable or partially assignable.

iii.   A certain Joint Operating Agreement ("JOA") dated June 26, 2008 between Gulf Coast Mineral, LLC. as Operator and MARC et al, as Non-Operator, A.A.P.L. FORM 610-1982, and subject to that certain Participation Agreement dated October 23, 2009, by and between GCM and Westrock or Nominee Land Corp

iv.   TI/TOI represents that the fair market value of their INTEREST is in excess of $735,000.00.

## IV.
## JURISDICTION AND VENUE

10.   The amount in controversy exceeds the jurisdictional minimum established for this Court.

11.   This case involves transactions, contract issues and causes of actions asserted in this Petition that arose in Harris County, Texas by one or more of the Defendants concerning real property located in Harris County, Texas. Therefore, jurisdiction is appropriate in this Court.

12.   The subject matter in controversy is within the jurisdictional limits of this Court

13.   Venue in Harris County is proper in this cause under Section 15.035(a) of the Texas Civil Practice and Remedies Code because this law suit involves a written contract that expressly names said county for performance and the subject property made the basis of this suit is located in this county.

14.   This court has jurisdiction over Defendants GCM, Billingsley and Genesis because Defendants purposefully availed themselves of the privilege of conducting business and offering oil and gas investments to investors in the state of Texas and established

Certified Document Number: 63136871 - Page 4 of 17

minimum contacts sufficient to confer jurisdiction over GCM, Billingsley and Genesis. Assumption of jurisdiction over the Defendants will not offend traditional notions of fair play and substantial justice and is consistent with the constitutional requirements of due process. Defendant, Genesis is a Texas limited liability company.

## V.
## CONDITIONS PRECEDENT

15. All conditions precedent has been performed or has occurred.

## VI.
## FACTUAL BACKGROUND

16. On or about August 2012, Robert Hynds, owner of Tryall Omega, Inc.(Plaintiff) visited an Oil and Gas Exploration and Investing tradeshow at George R. Brown Convention Center in Houston, Texas where he met Gary Billingsley the owner and Managing Member of Gulf Coast Mineral, LLC.("Defendant or GCM") who was advertising for potential investors to fund/purchase working interests securities in existing developmental well fields in the  state of Alabama where Defendant operates wells.  Plaintiff later also found GCM on the internet (EnergyNet.com) soliciting working interest investments in Alabama. Plaintiff downloaded some of GCM's production history from the internet site.   No prospectus, subscription agreement or accredited investor questionnaire was on EnergyNet.com's website for GCM's investments.

17. Given that no one was buying GCM's Oil and Gas working interest securities for wells production in Alabama via the internet, using telephone services, electronic mail, faxes, U.S. mail, traveling between Alabama and Texas for personal meetings, Gary Billingsley began personally soliciting Plaintiff for funds to invest in Alabama wells promising such working interest investments would be "great opportunities" for positive cash flow.  Gary Billingsley provided Plaintiff with oil reports and historical data about the Pleasant Home Field in Alabama on a 640 acre tract that had 5 wells with only one currently producing 2-3 barrels of oil per day.

18. After much solicitation and promises of the opportunities, on or about February 17, 2013, Gary Billingsley, through GCM solicited Plaintiff a 49% working interest investment in the Pleasant Home Field (the "Interest") for $735,000.00 for which

*Plaintiffs' Original Petition and Application for TRO and Injunction*

Plaintiffs wired $400,000.00 cash from their Houston, Texas bank to GCM's bank in Alabama.  Plaintiff also executed a Promissory Note for $335,000.00 related to the working interest purchase secured by a Mortgage (lien on collateral-wells and leases).

19.  Defendants never gave Plaintiff a prospectus, or certificates or financial statements or Alabama Oil and Gas Board regulatory information on the maintenance of the wells in the Pleasant Home Field.  Billingsley never disclosed to Plaintiffs prior to selling the 49% working interest in wells, that the wells had serious problems with a tremendous amount of dangerous salt water and one of the wells was in violation of disposing more than the daily limit of salt water set by the Alabama Oil and Gas Board. Moreover, Billingsley did not disclose that GCM had previously been found guilty of fresh water contamination, oils spills, fires and blowouts in the Pleasant Home Field and recently convicted and paid fines for criminal acts related to trying to conceal improper maintenance and disposal after the Alabama Oil and Gas Board's specific written instructions and inspections. Likewise, Billingsley did not disclose that GCM and Billingsley had previously been found guilty by the Illinois Securities Board of securities fraud, fined and barred within the State of Illinois. But for Billingsley intentional misrepresentation and concealment, and fraudulent inducement of the unregistered securities investment in the Pleasant Home Field, Plaintiff would not have made this "immediate" money losing investment.

20.  After, Plaintiffs purchased the Interest, Defendants Billingsley and GCM devised a scheme, where  they would be the Operators of the field and registered in Alabama as   the Operator of the Pleasant Home Field. However, Billingsley instructed Plaintiff to be responsible for paying 100% of all well expenses and invoices for well maintenance,   but Billingsley through GCM would control and were responsible for receiving 100% of all payments generated from oil & gas well production that was sold to Defendant Genesis.  Plaintiff had to incur all expenses that GCM, the Operator fraudulently estimated and or made up, then Plaintiff had to invoice GCM for payment which was slow or did not happen.  At the same time GCM, before ever paying Plaintiff oil and gas revenues received for his 49%

Interest, would deduct promissory note payments ( approx. $7,415.00 per month) and monthly overhead ( approx. monthly overhead charges of $8,000.00 to $10,000 per month on the low end).  With only one well only producing 2-3 barrels per day, Plaintiffs immediately began losing money on their investment.  This was by fraudulent design to cause a default so that Defendants could immediately pocket the $400,000.00 cash received, sell (reclaim) Plaintiffs' Interest and foreclose on Plaintiff's Mortgage thereby taking back the related wells and leases assigned to Plaintiffs.

21. In addition to inflated bills and invoices, Defendants began demanding cash calls from Plaintiffs by sending estimated work overs for wells and recompletions to be performed for $20,000.00 or more without itemized invoice and giving Plaintiff 10-15 days to pay, (sometimes only 48 hours to respond) or be subject to default and loss of Plaintiffs' investment.  With no money coming in to pay their promissory note and monthly overhead charges assessed to the wells, as well as exorbitant work over/recompletion charges, Plaintiff  became delinquent. GCM never received approval from the Alabama Oil and Gas Board nor informed Plaintiffs of approvals or permits to perform additional recompletions on the wells Billingsley was issuing cash calls on. Billingsley simply made up invoice estimates for well work overs and waited to extract cash from Plaintiffs or threaten pursuit of foreclosure. On or about January 3, 2013, Defendant filed a Notice of Default, Notice of Foreclosure and Notice of  UCC Sale of Collateral regarding Plaintiffs Interest in the State of Alabama.

22. On or about January 10, 2014, Plaintiff Tryall Omega, Inc. filed a Chapter 11 Bankruptcy in the Southern District Court of Texas (**1:14-cv-00386-WS-N**) to stave off Defendant GCM's  pursuit to foreclose on Plaintiff's 49% Interest.  The bankruptcy was settled and dismissed without prejudice based on court approval on or about April 1, 2014. In addition, the Parties signed a Settlement and Release Agreement, A Side Agreement that modified the original June 26, 2008 Joint Operating Agreement and Ratifications.  As per the Bankruptcy Court Settlement and Release Agreement made May 1, 2014, Plaintiffs' working interest revenue

Certified Document Number: 63136871 - Page 7 of 17

generated from the sales of oil and gas production to Defendant Genesis Energy LLC from the Pleasant Home Field wells ) would be directly paid to Plaintiffs and all operating charges and maintenance would be supervised by the Operator, GCM.

23. Frustrated by Plaintiffs filing for bankruptcy in the mists of GCM's foreclosure, GCM began creating fraudulent work over charges on the one well producing and on other wells that were not producing,  Immediately, on May 1, Billingsley sent Plaintiff and AFE (Authorization for Expenditure) and work over  invoice on the Smak Dixon Well 31-11#1 for $302,000.00 and a cash call for $147,980.00 for his 49%. Interest.   Again, in addition to monthly promissory note payments and charges for monthly administrative and well maintenance charges invoiced to Plaintiff, on or about August 26, 2014, Billingsley sent Plaintiff another AFE and work over invoice on Smak Dixon Well 31-6#1 for $303,050.00 and a cash call for $148,494,50 for Plaintiffs' 49% interest.   Plaintiffs have not been able to get itemized details of these estimates to perform the work, no proper accounting for their records and, as a minority interest holder, they have had no say in what GCM demands.

24. GCM is currently demanding a cash call for $147,980.00 from Plaintiff for a work over on Smak-Dixon Well 31-11#1 which is currently not producing. Billingsley now is trying to carve Plaintiff out of this well going forward if we do not send him more money without question. The current injection volumes of salt water from the currently producing Smak-Dixon 31-6  is already over the state regulatory maximum injection volumes of 1200 BWPD.  Conducting a work over on the  Smak-Dixon 31-11-#1 will increase the amount of saltwater being injected into the nearby Smak-Dixon 31-10 salt water disposal well (which is currently in violation of Alabama Oil and Gas Board maximum injection volumes of 1200 BWPD. Current injection pressure on the reservoir continues to threaten contamination of public water supply and is in direct violation of the Clean Water Act which carries a fine up to $10,000.00 per occurrence and a criminal sentence of up to 10 years, we are faced with imminent harm and irreparable damages voluntarily conspiring with GCM who as Operator of the Pleasant Home Field, is knowingly violating state and federal laws.

Certified Document Number: 63136871 - Page 8 of 17

25. Unbeknownst to Plaintiffs  and prior to being solicited this Alabama investment, Billingsley and GCM has a history of fraudulent activities, including but not limited to, (1) willfully violating oil and gas regulatory laws in the State of Alabama for safety and well maintenance and (2) fraudulently offering unregistered securities to unsuspecting investors not located in the same state where GCM and Billingsley operate oil and gas well investments. Out-of- state investors cannot inspect GCM's fraudulent billing and cash call practices before the investor loses their investment by foreclosure or some other redirect or assignment of working interest scheme.  GCM and Billingsley made misrepresentations to Plaintiffs which were material, false and have caused damage to Plaintiffs. Those misrepresentations discussed in the previous paragraphs were made to Plaintiffs with the specific intent that the representations and omissions be relied upon by Plaintiffs.

26. Plaintiffs, according to GCM, is now delinquent on required payments due. Consequently, on or about October 1, 2014, GCM instructed Defendant Genesis to credit all production payments related to Plaintiffs' Interest directly to GCM's account. Defendant Genesis has been collaborating with GCM and has unilaterally stop payments to Plaintiffs without Plaintiffs' consent. This fraudulent scheme which started before Plaintiffs' bankruptcy has continued post-bankruptcy causing additional losses to Plaintiff and imminent harm.  Defendant Billingsley  and GCM are currently threatening to pursue similar confiscation actions as they did against Plaintiff in December 2013.  See **EXHIBIT C** attached hereto and incorporated and referenced herein.

### VII.
### CAUSES OF ACTION

#### A.  FRAUD AND FRAUDULENT INDUCEMENT

27. Plaintiffs incorporate by reference each of the facts set forth above.

28. The representations made by Defendant GCM and Billingsley to Plaintiff were false, material, and  were made by each with the intention that Plaintiffs rely on those false and material misrepresentations.  Billingsley solicited securities investments to TI and TOI's owner, Robert Hynds, by intrastate telephone calls between Texas and Alabama offering profit participation in oil and gas ventures promising a "great" business opportunity.

*Plaintiffs' Original Petition and Application for TRO and Injunction*

9

Plaintiffs did rely on those representations to his detriment. Plaintiffs have been damaged by the false representations and seek unliquidated damages within the jurisdictional limits of this court.

29. Plaintiff specially alleges Defendants did not "deal" with Plaintiff in "good faith" in that while informing Plaintiff that Defendant GCM was soliciting securities investments in wells in the Pleasant Home Field, Defendant GCM and Billingsley did not inform Plaintiffs via  sales brochure, prospectus or subscription agreements that the wells in question had serious problems with a tremendous amount of dangerous salt water that were exceeding their daily Alabama Oil and Gas Board regulatory limits for storage, injection and disposal.

30. Plaintiff a l s o  specially alleges Defendants did not misrepresented and  intentionally did not disclosed that GCM had been found guilty of the Alabama Oil and Gas Board in 2011of contamination of fresh water in the Pleasant Home Field, unreported spills at salt water disposal wells , unlawful burial of tank bottoms and files, spills and blowouts  in the same field Billingsley was soliciting to Plaintiffs as great opportunities in 2013. Defendant GCM and Billingsley did not inform Plaintiffs that GCM had intentionally filed false statements to the Alabama Oil and Gas Board regarding their oil contamination requirements or the regulatory violations and fines issues against GCM related to the wells and Pleasant Home Field that Billingsley solicited as a great working interest investment to Plaintiffs in January 2013.  Plaintiff relied on Billingsley to his detriment and has been damaged and fraudulently bilked out of additional money for fake invoices, well recompletions call calls for work never performed on Plaintiffs' wells.

31. Plaintiff further alleges that Defendants have not complied with the terms of the Joint Operating Agreement ("JOA") dated June 26, 2008 between Gulf Coast Mineral, LLC. as Operator and MARC et al, as Non-Operator, A.A.P.L. FORM 610-1982, and subject to that certain Participation Agreement dated October 23, 2009, by and between GCM and Westrock or Nominee Land Corp by unlawfully collaborating with Genesis to withholding Plaintiffs production proceeds unilaterally without Plaintiffs' express written consent.  Defendant GCM and Gary Billingsley also has sold wells listed under the June 26, 2008 JOA that Plaintiffs have a 49% Interest in

Certified Document Number: 63136871 - Page 10 of 17

and Defendant GCM and Billingsley have concealed these sales transactions from Plaintiffs and have not paid Plaintiffs their 49% of the proceeds from the sale of those wells.

32. Plaintiffs alleges that as a consequence of the actions and/or inactions of Defendants that Plaintiffs has been deprived of the benefits of their Interest and benefits of their loan agreement by which they purchased the I n t e r e s t , deprived of the opportunity to make lawful arrangements to bring t h e  indebtedness actually owed to current status, and/or deprived of an opportunity to make arrangements to be able to refinance their loan with a lender based b e i n g   w r o n g f u l l y   a n d   f r a u d u l e n t l y   h e l d   i n   m o r t g a g e   d e f a u l t s t a t u s , and of destroying the benefit of the profit generated from production sales  by netting out inflated invoices, false capital call requirements and being charges well expenses on unrelated wells not owned by Plaintiff. See Plaintiff's Affidavit in Support.

33. Plaintiff alleges and has reason to believe there is sufficient circumstantial evidence to support the proposition that the actions and inactions of Defendants were at least gross negligence, if not intentional, in an effort to deprive Plaintiff of his 49% W o r k i n g   I n t e r e s t s , and that Defendants have jointly and severally conspired to deprive Plaintiffs of their right to sales proceeds from production sold by Defendant Genesis on wells in the Pleasant Home Field.

### B.      WRONGFUL FORECLOSURE DUE TO FRAUD

34. Plaintiffs incorporate by reference each of the facts set forth above.

35.  Billingsley and GCM have unilateral and fraudulently instructed Defendant Genesis to stop paying Plaintiffs' production payments on their investment Interest related to the sales proceeds generated from the Pleasant Home field in order to oppress Plaintiff as a 49% minority Interest investor and wrongfully force Plaintiffs to default on their secured mortgage in order to sale Plaintiffs' Interest by foreclosure. Defendant Genesis has knowingly, willfully and purposefully collaborated with Defendant GCM and Billingsley without notification to Plaintiffs or consent from Plaintiffs. Defendants Billingsley, despite

Certified Document Number: 63136871 - Page 11 of 17

contractual Working Interest Agreements and the June 26, 2008 JOA, simply notified Defendant Genesis to forward all of Plaintiffs' production proceed payments to Defendant GCM.   Without questions, Genesis stop paying Plaintiffs based on instructions from Billingsley. Defendants have jointly and severally conspired to deprive Plaintiffs of their right to sales proceeds from production sold by Defendant Genesis on wells in the Pleasant Home Field.

36.   Plaintiffs have no adequate remedy at law.  The losses suffered by Plaintiffs as a result of a  foreclosure on its Interest cannot be calculated due to the difficulty imputing a value on a person's inability to obtain financing for another mortgage, resulting in an inability to refinance Plaintiffs' mortgage that secures his Interest. Additionally, Plaintiffs have no adequate remedy to reverse a foreclosure sale and set it aside except by a court ordered injunction or Rescission of Sales and/or if the court invokes the equitable remedy of constructive trust.  Plaintiffs seeks a constructive trust on any attempted sale by Defendants and judgment that the sale be declared void.

### C.  BREACH OF FIDUCIARY DUTY AND MINORITY WORKING INTEREST HOLDER OPPRESSION

37.  Plaintiffs incorporate by reference each of the facts set forth above.

38. A fiduciary relationship existed between Plaintiffs and Defendants.  Defendants breached their fiduciary duties to plaintiffs, including their duties of loyalty, care and disclosure, by asserting dominion over distributions from Defendant Genesis.  Defendants GCM and Billingsley also breached their duties by usurping corporate opportunities, by self-dealing and by failing to convey all relevant information to Plaintiffs.

39. Defendants have breached their duties to Plaintiffs by, among other things, not disclosing to Plaintiffs all fact material to each decision made by GCM and Billingsley from which Defendants were receiving benefits, participating in and, benefits from decisions that were materially,

*Plaintiffs' Original Petition and Application for TRO and Injunction*

substantially and /or procedurally unfair to Plaintiffs, and not providing the minority working Interest holder the same benefits that were provided to Defendants.

40. Defendants' wrongful actions resulted in Plaintiffs' damages and a wrongful benefit to Defendants for which Plaintiffs seek actual damages, equitable remedies including forfeiture, punitive damages and attorney's fees.

### D.  BREACH OF THE WORKING INTEREST AGREEMENT

41. Plaintiffs incorporate by reference each of the facts set forth above.

42. Working Interest Agreement and the Joint Operating Agreement ("JOA") dated June 26, 2008 between Gulf Coast Mineral, LLC. as Operator and MARC et al, as Non-Operator, A.A.P.L. FORM 610-1982, and subject to that certain Participation Agreement dated October 23, 2009, by and between GCM and Westrock or Nominee Land Corp constituted valid, enforceable contracts, and Plaintiffs are proper parties to sue for breach of those contracts.

43. The Plaintiffs performed their obligations under the Agreements and paid the requisite investment amounts to become a 49% Working Interest investor, yet the Defendants and GCM and Billingsley breached the contract. Defendants' wrongful actions resulted in Plaintiffs' damages and a wrongful benefit to Defendants for which Plaintiffs seek actual damages, equitable remedies including forfeiture, punitive damages and attorney's fees.

### VIII.

### APPLICATION FOR TEMPORARY RESTRAINING ORDER AND INJUNCTIVE RELIEF

44. Plaintiffs' application for a temporary restraining order is authorized by Chapter 65 of the Texas Civil Practice & Remedies Code.

45. Here, based upon reasonable information and belief, Plaintiffs assert that Defendants have intent to foreclose on Plaintiffs' Interest and selling Plaintiff's collateral listed in Exhibit A & B attached and referenced herein. If the pending sale of any of Plaintiff's Interest is consummated , Plaintiffs' ability to obtaining what was promised them in terms of their rights to participate in the current and future profits from the production of oil and

Certified Document Number: 6313687I - Page 13 of 17

gas and right to sell their Interest in the future will have been significantly decreased and impaired.  Accordingly, Plaintiffs ask this Court to grant a temporary restraining order placing any sales proceeds from the sale of Plaintiff's working Interest and any related proceeds from production into escrow accounts, or in a constructive trust for the benefit of Plaintiffs.

46. A probable right to relief exists because Plaintiffs are the investor and 49% owner of the Interest in the Pleasant Home Field, and if they had not been induced by GCM and Billingsley, told untruths and half truths about the impaired production of the five wells and the excessive amount of water  being produced from the current wells in production and existing Alabama Oil and Gas Board fines and violations related to the refusal to well maintenance, cleanup and waste disposal in Pleasant Home Field prior to Plaintiffs investment in the field, Plaintiff would not have made an investment in the fields.

47. Because Defendant's Gary Billingsley and GCM have grossly misrepresented the Working Interest investment in the Pleasant Home Field and their intent to operate the related wells with full disclosure, truthful accounting and adherence to Alabama Oil & Gas Board regulations, Defendants have unlawfully and without authorization exercised control over Plaintiff's working interest to the exclusion of, or inconsistent with Plaintiffs' rights as investors with the intent to deprive by attempted foreclosure of Plaintiffs' Interest.

48. Further, adequate remedy at law does not exist and Plaintiffs face imminent harm and irreparable injury without an injunction paying sales and production proceeds into a trust or into escrow.  Only an escrow of  the sales and production proceeds or the placement of a constructive trust on them will guarantee that those funds are available for disbursement in a manner consistent with Plaintiffs' expectations as an investor based upon the representations made to Plaintiff's when Billingsley and GCM first solicited the Working Interest Investment in Houston, Texas and in Alabama when Plaintiff was asked to take site visits of the Pleasant Home Field wells.

49. Therefore , an adequate remedy at law does not exist and Plaintiffs face imminent harm and irreparable injury. According, Plaintiffs request an injunction guaranteeing an escrow of funds or a constructive trust be placed on the sale proceeds and production proceeds generated from sales to Genesis.

50. Plaintiffs are willing to post a reasonable bond in order to obtain a temporary restraining

order.

## IX
## REQUEST FOR HEARING ON TEMPORARY RESTRAINING ORDER

51. Plaintiffs would further pray for this Court to set a hearing on Plaintiffs' Application for Temporary Restraining Order and subsequent injunctive relief in this matter.

## X.
## REQUEST FOR TEMPORARY INJUNCITON

52. Plaintiffs ask the Court to set their application for temporary injunction for a hearing, and after the hearing, issue a temporary injunction against Defendants.

## XI.
## ADDITIONAL RELIEF REQUESTED

53. Defendants have instituted proceeds to take Plaintiffs' working interest based on what is believed to be an invalid Side Agreements . Plaintiffs have no adequate remedy at law. Plaintiff would ask the court to issue a temporary restraining order and/or temporary injunction prohibiting Defendant Genesis from interfering  or excluding Plaintiffs from its Interest  and allocation for production proceeds from the Pleasant Home Field wells in this case.

54. Plaintiffs hereby makes a request for production for all documentation proof of their ownership of working interest, invoices for request of amount of LOE from the wells and sale of collateral from  the working interested purchased or sold as a part of the 2008 JOA  and their authorization from the owner of the indebtedness to institute a foreclosure process against Plaintiff.

55. Declare that Defendant Genesis do not have standing to redirect Plaintiffs' 49% working interest proceeds from the sale of oil and gas from the Pleasant Home Field to Defendant GCM without Plaintiffs' express instructions and written consent to Genesis.

56. In the alternative and /or in addition, Plaintiffs seeks a Temporary Restraining  Order and subsequently a Temporary Injunction against Defendants prohibiting them from:

A. Taking any action that might damage, modify, secret, and/or destroy any document that represents or embodies information regarding the Plaintiff's Interest;

B. Doing or taking any action that might sell, transfer, assign, encumber, or in any other manner alienate any interest in and to the mortgage, Plaintiffs' Interest or the Pleasant Home Field, except as specifically authorized by an order of this Court, after a hearing and an opportunity for Plaintiffs to present arguments and/or evidence in opposition to such action;

*Plaintiffs' Original Petition and Application for TRO and Injunction*

C. Doing any one or more of the above acts or omissions through a third-party and/or taking all reasonable and lawful means to prohibit a third-party from doing any one or more of the above acts or omissions, even if that means notifying the appropriate law enforcement personnel that such third-party or third-parties are about to act or engaged in such act or acts.

D. Selling or reconveying title to Plaintiff's Interest; and

E. Doing or taking any action that might destroy, modify, encumber, transfer, or otherwise changing the value of Plaintiff's Interest;

57. Plaintiffs specifically request the Court to sign a Temporary Restraining Order, to be matured into a Temporary Injunction against Defendants with a bond set by Court in a minimal amount.

## XII.
## ATTORNEYS FEES & COSTS

58. As a result of the actions of the Defendants, Plaintiffs was forced to defend themselves in court. Plaintiffs, by and through their attorney of record, seek to recover reasonable attorney fees, litigation (including mediation) expenses, expenses of any sale of the collateral, and costs of suit against Defendants for having been compelled to bring this request for relief based upon the actions and inactions of Defendants, jointly and/or severally. Plaintiffs a r e entitled to an award of attorney fees and costs under the Texas Civil Practices and Remedies Code Section 38.001 related to the breach of contract claims.

## XIII.
## PRAYER

WHEREFORE, Plaintiffs pray that Defendants be cited to appear and answer herein, and that upon final trial, and after the issuance of a temporary restraining order and a temporary injunction, Plaintiffs be awarded the following from Defendants, jointly and severally:

59. Actual damages;

60. Any and all remedies allowed by and applicable to Plaintiff's actions, as described herein above for their actions as more fully stated in Plaintiffs' Petition;

61. Any and all other remedies afforded by Texas law, including but not limited to, costs of court and costs of suit;

62. Prejudgment and post-judgment interest

63. Reasonable attorney fees

64. Setting aside the attempted sales of Plaintiff's Interest

65. Injunctive relief against Defendants (temporary and permanent) prohibiting interference with Plaintiff s possession, title, occupancy or production proceeds of the Working Interest in Pleasant Field Home.

66. Injunctive relief ordering Defendants to appear at a temporary injunction hearing producing documentation of disclosure of prior history of well performance, Alabama Oil and Gas Board violations and fines prior to Plaintiff's solicited securities offering in Working Investment and related documents disclosed to Plaintiffs.

67. Injunctive relief ordering Defendants to appear at a temporary injunction hearing producing documentation of all Working Interest secured by certain liens and subject to a certain Joint Operating Agreement ("JOA") dated June 26, 2008 between GCM, as Operator and MARC et al, as Non-Operator, A.A.P.L. FORM 610-1982 subject foreclosure and the authority under which the foreclosure is to be instituted.

68. All other relief and further relief, at law and in equity, to which Plaintiffs may be justly entitled as the Court deems appropriate.

Respectfully Submitted,

**LAW OFFICE OF VICTOR D. WALKER, P.C.**

/s/ *Victor D. Walker*

**Victor D. Walker**
**SBN. 00789775**
**One Riverway, Suite 1700**
**Houston, TX 77056**
**Tel: (713) 724-5300**
**Fax (713) 493-2560**
**Email: vwalker@walkersecuritieslaw.com**
**ATTORNEY FOR PLAINTIFFS**
**TRYALL OMEGA, INC. AND TRYALL, INC.**

*Plaintiffs' Original Petition and Application for TRO and Injunction*



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   November 20, 2014

Certified Document Number:       63136871 Total Pages:  17

Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

**Exhibit A**

**LEASES**

**Section 31,Twp. 3North, Range 15 East, Covington County Alabama**

1) **Oil, Gas and Mineral Lease dated February 6, 2008 from Doris Poole to Gulf Coast Mineral, LLC. recorded in Book 2008, Page 3934 of the records of Covington County, Alabama.**

2) **Oil, Gas and Mineral Lease dated February 26, 2008, from Andalusia Mineral Company to Gulf Coast Mineral, LLC. recorded in Book 2008, Page 3936 of the records of Covington County, Alabama.**

3) **Oil, Gas and Mineral Lease dated February 26, 2008 from The Solon and Martha Dixon Foundation to Gulf Coast Mineral, LLC. recorded  in  Book 2008, Page 9998 of the records of Covington County, Alabama.**

4) **Oil, Gas and Mineral Lease dated March 12, 2008, from Wegener Enterprises, Ltd. To Gulf Coast Mineral, LLC. recorded in Book 2008, Page 10010 of the records of Covington County, Alabama.**

5) **Oil, Gas and Mineral Lease dated April 24, 2008, from Merry and Walker Company to Gulf Coast Mineral, LLC. recorded in Book 2008, Page 10012 of the records of Covington County, Alabama.**

6) **Oil, Gas and Mineral Lease dated March 1, 2008, from Black Stone Natural Resources LLP. to Gulf Coast Mineral, LLC. as evidenced by Declaration recorded in Book 2008, Page 13398 of the records of Covington County, Alabama.**

7) **Oil, Gas and Mineral Lease dated March 12, 2008, from Watson Wise Foundation to Gulf Coast Mineral, LLC. recorded in Book 2008, Page 13400 of the records of Covington County, Alabama.**

8) **Oil, Gas and Mineral Lease dated March 12, 2008, from Robert R. Ranck to Gulf Coast Mineral, LLC. recorded in Book 2008, Page 14546 of the records of Covington County, Alabama.**



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   November 20, 2014

Certified Document Number:        63136872 Total Pages:  1

Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

**EXHIBIT B**

**(WELLS)**

**Section 31, Twp. 3 North, Range 15 East, Covington County Alabama**

1) Smak-Dixon 31-6#1 Well (API No. 01-039-20028-00-00)

2) Smak-Dixon 31-7#1 Well (API No. 01-039-20035-00-00)

3) Smak-Dixon 31-11#1 Well (API No. 01-039-20030-00-00}

4} Smak-Dixon 31-10#1 Well (API No. 01-039-20031-00-00}

5) Smak-Dixon 31-10 SWD#l Well (API No. 01-039-20038-00-00)

AND WHATEVER INTEREST IN WELLS SUBJECT TO THE JUNE 26, 2008 JOA GCM, AS OPERATOR & MARC, et al, as Non-Operator

AND CONTRACT AREA INCLUDING WEST FALCO FIELD

1) Paramount Federal 16-14 #1

2) Paramount Federal 21-1 SWD

3) Paramount Jeffers 17-9#1

Certified Document Number: 63136873 - Page 1 of 1



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   November 20, 2014


Certified Document Number:      63136873 Total Pages:  1


Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS


**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

CAUSE NO. __C___

| | | |
|---|---|---|
| **TRYALL OMEGA, INC. and** | § | **IN THE DISTRICT COURT** |
| **TRYALL, INC.** | § | |
| | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **V.** | § | |
| | § | |
| **GULF COAST MINERAL,** | § | **HARRIS COUNTY, TEXAS** |
| **LLC, GARY BILLINGSLEY** | § | |
| **AND GENESIS ENERGY,** | § | |
| **LLC** | § | |
| | § | |
| | § | |
| *Defendant.* | § | **_____JUDICIAL DISTRICT** |

### PLAINTIFF'S ORIGINAL PETITION AND APPLICATION FOR TEMPORARY RESTRAINING ORDER AND REQUEST FOR TEMPORARY INJUNCTION

**TO THE HONORABLE JUDGE OF SAID COURT:**

TRYALL OMEGA, INC. ("TOI") and TRYALL, INC. ("TI") (collectively "**Plaintiffs**"), file their Original Petition and Application for Temporary Restraining Order and Injunctive Relief against GULF COAST MINERAL, LLC. ("GCM"), GARY BILLINGSLEY ("Billingsley") and GENESIS ENERGY, LLC ("Genesis") (collectively "**Defendants**"). TOI, TI, GCM, Billingsley and Genesis are each referred to herein as a "Party" and referred to collectively herein as the "Parties". Plaintiffs, for cause would respectfully show this Honorable Court the following:

I.
### DISCOVERY CONTROL PLAN LEVEL

1. In accordance with Tex. R. Civ. P. 190, discovery is intended to be conducted under Level 2.

II.
### REQUEST FOR DISCLOSURE

2. Pursuant to Rule 194 of the Texas Rules of Civil Procedure, Defendants are requested to disclose the information and material described in Rule 194.2 **within fifty days** of services of

Certified Document Number: 63136874 - Page 1 of 17

this request at the office of the undersigned.

### III.
### IDENTIFICATION OF PARTIES AND SERVICE

3. Plaintiff **TRYALL OMEGA, INC.** is a Texas corporation whose principal place of business is Harris County, Texas.

4. Plaintiff, **TRYALL, INC..** is a Texas corporation whose principal place of business is Harris County, Texas. Plaintiffs who by and through their attorney, allege that the following herein are DEFENDANTS at this time, although Plaintiffs reserve the right and privilege to bring additional and/or supplemental claims against any other parties, whether named or not as of the date of this pleading is filed.

5. Defendant, **GULF COAST MINERAL, LLC**, is an Alabama limited liability company whose principal place of business is 109 E. 14th Avenue, Gulf Shores, AL 36542, Covington, County, Alabama. Defendant GCM may be served with process through its registered agent. GCM may be served with process as follows:

   **GULF COAST MINERAL, LLC.**
   By and through its Registered Agent: Patricia A. Billingsley
   302 W. 8th Street
   Gulf Shores, AL 36542 USA,

6. Defendant, **GARY BILLINGSLEY**, is a resident citizen of Gulf Shores, Alabama, and is over the age of 18 years. Billingsley may be served with process as follows:

   **GARY BILLINGSLEY,**
   302 W. 8th Street
   Gulf Shores, AL 36542 USA
   (Or where ever he may be found)

7. Defendant, **GENESIS ENERGY, LLC**, is Delaware limited liability company that is also registered with the Texas Secretary of State as a foreign limited liability company, with its principal location of business located at 919 Milam Street, Suite 2100, Houston, Texas 77002. Plaintiff has reason to believe that GENESIS ENERGY, LLC operates as the General Partner of Genesis Energy, L.P. and is an independent gatherer and marketer of crude oil in Texas and Alabama. Genesis may be served with process through its registered agent Karen N. Pape, 919 Milam Street, Suite 2100, Houston,

Certified Document Number: 63136874 - Page 2 of 17

TX 77002.

8. The **INTEREST,** which is the subject matter of this litigation is a 49% working interest in the wells, leases and minerals as extracted and accountings arising out of the sale at the wellhead in a 640 acre unit in the Pleasant Home Field  in Covington County, Alabama purchased by TOI from GCM on February 23, 2013 for $735,000.00 and secured by certain liens and subject to a certain Joint Operating Agreement ("JOA") dated June 26, 2008 between GCM, as Operator and MARC et al, as Non-Operator, A.A.P.L. FORM 610-1982. TI, through its wholly-own subsidiary, TOI currently hold the INTEREST, and has done so throughout the existence of a mortgage with GCM, wrongful foreclosure notices, and TOI's voluntary reorganization in the Southern District of Texas Bankruptcy Court in 2014 due to GCM's efforts to subject TOI to operating losses and extort the only producing well in the Pleasant Home Field.

9.     The **INTEREST** is more particularly described as:

a.  An undivided 49% of 8/8ths working interest which is NRI of 36.61% with a corresponding 49% of 8/8ths net revenue interest in and to the  entire estates created by the oil, gas and mineral leases described in **EXHIBIT A,** attached to an made a part hereof for all purposes (the "Leases") and the lands covered thereby (the "Lands"), together with all property and rights incident thereto, to  the extent the same relate directly to the Leases and Lands and are assignable or partially assignable, including all such rights in, to, and under all agreements, product purchase and sale contracts, leases, permits, rights-of-way, easements, licenses, farmouts, options and orders directly relating thereto; Subject to a combined royalty and overriding royalty burden of 25.269196% leaving a net revenue interest of 74.730804%.

i.  An undivided 49% of 8/8ths interest in and to the wells described in **EXHIBIT B,** attached to and made a part hereof for all purposes (the Wells") along with the wellbores, fixtures, equipment and other property, both real and personal, that are used or held for use in connection with the Leases, Lands and Wells, appurtenant thereto, or directly used or held for use in connection with the Leases, Lands and Wells, or with the production, treatment, sale, or

disposal of hydrocarbons or waste produced therefrom or attributable thereto;

ii.  An undivided 49% of 8/8ths working interest with a corresponding 49% of 8/8ths net revenue interest in and to all unitization, pooling and operating agreements and the units created thereby, including any and all units formed under orders, regulations rules and other official acts of any governmental authority having requisite jurisdiction, together with the same percentage of right, title and interest created thereby in the Lands, insofar only to the extent the same relate directly to the Leases and Lands and are assignable or partially assignable.

iii.  A certain Joint Operating Agreement ("JOA") dated June 26, 2008 between Gulf Coast Mineral, LLC. as Operator and MARC et al, as Non-Operator, A.A.P.L. FORM 610-1982, and subject to that certain Participation Agreement dated October 23, 2009, by and between GCM and Westrock or Nominee Land Corp

iv.  TI/TOI represents that the fair market value of their INTEREST is in excess of $735,000.00.

## IV.
## JURISDICTION AND VENUE

10.  The amount in controversy exceeds the jurisdictional minimum established for this Court.

11.  This case involves transactions, contract issues and causes of actions asserted in this Petition that arose in Harris County, Texas by one or more of the Defendants concerning real property located in Harris County, Texas. Therefore, jurisdiction is appropriate in this Court.

12.  The subject matter in controversy is within the jurisdictional limits of this Court

13.  Venue in Harris County is proper in this cause under Section 15.035(a) of the Texas Civil Practice and Remedies Code because this law suit involves a written contract that expressly names said county for performance and the subject property made the basis of this suit is located in this county.

14.  This court has jurisdiction over Defendants GCM, Billingsley and Genesis because Defendants purposefully availed themselves of the privilege of conducting business

Certified Document Number: 63136874 - Page 4 of 17

4

and offering oil and gas investments to investors in the state of Texas and established minimum contacts sufficient to confer jurisdiction over GCM, Billingsley and Genesis. Assumption of jurisdiction over the Defendants will not offend traditional notions of fair play and substantial justice and is consistent with the constitutional requirements of due process. Defendant, Genesis is a Texas limited liability company.

**V.**

**CONDITIONS PRECEDENT**

15. All conditions precedent has been performed or has occurred.

**VI.**

**FACTUAL BACKGROUND**

16. On or about August 2012, Robert Hynds, owner of Tryall Omega, Inc.(Plaintiff) visited an Oil and Gas Exploration and Investing tradeshow at George R. Brown Convention Center in Houston, Texas where he met Gary Billingsley the owner and Managing Member of Gulf Coast Mineral, LLC.("Defendant or GCM") who was advertising for potential investors to fund/purchase working interests securities in existing developmental well fields in the state of Alabama where Defendant operates wells. Plaintiff later also found GCM on the internet (EnergyNet.com) soliciting working interest investments in Alabama. Plaintiff downloaded some of GCM's production history from the internet site. No prospectus, subscription agreement or accredited investor questionnaire was on EnergyNet.com's website for GCM's investments.

17. Given that no one was buying GCM's Oil and Gas working interest securities for wells production in Alabama via the internet, using telephone services, electronic mail, faxes, U.S. mail, traveling between Alabama and Texas for personal meetings, Gary Billingsley began personally soliciting Plaintiff for funds to invest in Alabama wells promising such working interest investments would be "great opportunities" for positive cash flow. Gary Billingsley provided Plaintiff with oil reports and historical data about the Pleasant Home Field in Alabama on a 640 acre tract that had 5 wells with only one currently producing 2-3 barrels of oil per day.

18. After much solicitation and promises of the opportunities, on or about February 17, 2013, Gary Billingsley, through GCM solicited Plaintiff a 49% working interest

Certified Document Number: 63136874 - Page 5 of 17

investment in the Pleasant Home Field (the "Interest") for $735,000.00 for which Plaintiffs wired $400,000.00 cash from their Houston, Texas bank to GCM's bank in Alabama.  Plaintiff also executed a Promissory Note for $335,000.00 related to the working interest purchase secured by a Mortgage (lien on collateral-wells and leases).

19.  Defendants never gave Plaintiff a prospectus, or certificates or financial statements or Alabama Oil and Gas Board regulatory information on the maintenance of the wells in the Pleasant Home Field.  Billingsley never disclosed to Plaintiffs prior to selling the 49% working interest in wells, that the wells had serious problems with a tremendous amount of dangerous salt water and one of the wells was in violation of disposing more than the daily limit of salt water set by the Alabama Oil and Gas Board. Moreover, Billingsley did not disclose that GCM had previously been found guilty of fresh water contamination, oils spills, fires and blowouts in the Pleasant Home Field and recently convicted and paid fines for criminal acts related to trying to conceal improper maintenance and disposal after the Alabama Oil and Gas Board's specific written instructions and inspections. Likewise, Billingsley did not disclose that GCM and Billingsley had previously been found guilty by the Illinois Securities Board of securities fraud, fined and barred within the State of Illinois. But for Billingsley intentional misrepresentation and concealment, and fraudulent inducement of the unregistered securities investment in the Pleasant Home Field, Plaintiff would not have made this "immediate" money losing investment.

20.  After, Plaintiffs purchased the Interest, Defendants Billingsley and GCM devised a scheme, where  they would be the Operators of the field and registered in Alabama as  the Operator of the Pleasant Home Field. However, Billingsley instructed Plaintiff to be responsible for paying 100% of all well expenses and invoices for well maintenance,   but Billingsley through GCM would control and were responsible for receiving 100% of all payments generated from oil & gas well production that was sold to Defendant Genesis.  Plaintiff had to incur all expenses that GCM, the Operator fraudulently estimated and or made up, then Plaintiff had to invoice GCM for payment which was slow or did not happen.  At the same time

Certified Document Number: 63136874 - Page 6 of 17

GCM, before ever paying Plaintiff oil and gas revenues received for his 49% Interest, would deduct promissory note payments ( approx. $7,415.00 per month) and monthly overhead ( approx. monthly overhead charges of $8,000.00 to $10,000 per month on the low end).  With only one well only producing 2-3 barrels per day, Plaintiffs immediately began losing money on their investment.   This was by fraudulent design to cause a default so that Defendants could immediately pocket the $400,000.00 cash received, sell (reclaim) Plaintiffs' Interest and foreclose on Plaintiff's Mortgage thereby taking back the related wells and leases assigned to Plaintiffs.

21.  In addition to inflated bills and invoices, Defendants began demanding cash calls from Plaintiffs by sending estimated work overs for wells and recompletions to be performed for $20,000.00 or more without itemized invoice and giving Plaintiff 10-15 days to pay, (sometimes only 48 hours to respond) or be subject to default and loss of Plaintiffs' investment.  With no money coming in to pay their promissory note and monthly overhead charges assessed to the wells, as well as exorbitant work over/recompletion charges, Plaintiff  became delinquent. GCM never received approval from the Alabama Oil and Gas Board nor informed Plaintiffs of approvals or permits to perform additional recompletions on the wells Billingsley was issuing cash calls on. Billingsley simply made up invoice estimates for well work overs and waited to extract cash from Plaintiffs or threaten pursuit of foreclosure. On or about January 3, 2013, Defendant filed a Notice of Default, Notice of Foreclosure and Notice of  UCC Sale of Collateral regarding Plaintiffs Interest in the State of Alabama.

22.  On or about January 10, 2014, Plaintiff Tryall Omega, Inc. filed a Chapter 11 Bankruptcy in the  Southern District Court of Texas (**1:14-cv-00386-WS-N**) to stave off Defendant GCM's  pursuit to foreclose on Plaintiff's 49% Interest.  The bankruptcy was settled and dismissed without prejudice based on court approval on or about April 1, 2014. In addition, the Parties signed a Settlement and Release Agreement, A Side Agreement that modified the original June 26, 2008 Joint Operating Agreement and Ratifications.  As per the Bankruptcy Court Settlement

Certified Document Number: 63136874 - Page 7 of 17

and Release Agreement made May 1, 2014, Plaintiffs' working interest revenue generated from the sales of oil and gas production to Defendant Genesis Energy LLC from the Pleasant Home Field wells ) would be directly paid to Plaintiffs and all operating charges and maintenance would be supervised by the Operator, GCM.

23. Frustrated by Plaintiffs filing for bankruptcy in the mists of GCM's foreclosure, GCM began creating fraudulent work over charges on the one well producing and on other wells that were not producing,  Immediately, on May 1, Billingsley sent Plaintiff and AFE (Authorization for Expenditure) and work over  invoice on the Smak Dixon Well 31-11#1 for $302,000.00 and a cash call for $147,980.00 for his 49%. Interest.   Again, in addition to monthly promissory note payments and charges for monthly administrative and well maintenance charges invoiced to Plaintiff, on or about August 26, 2014, Billingsley sent Plaintiff another AFE and work over invoice on Smak Dixon Well 31-6#1 for $303,050.00 and a cash call for $148,494,50 for Plaintiffs' 49% interest.   Plaintiffs have not been able to get itemized details of these estimates to perform the work, no proper accounting for their records and, as a minority interest holder, they have had no say in what GCM demands.

24. GCM is currently demanding a cash call for $147,980.00 from Plaintiff for a work over on Smak-Dixon Well 31-11#1 which is currently not producing. Billingsley now is trying to carve Plaintiff out of this well going forward if we do not send him more money without question. The current injection volumes of salt water from the currently producing Smak-Dixon 31-6  is already over the state regulatory maximum injection volumes of 1200 BWPD.  Conducting a work over on the  Smak-Dixon 31-11-#1 will increase the amount of saltwater being injected into the nearby Smak-Dixon 31-10 salt water disposal well (which is currently in violation of Alabama Oil and Gas Board maximum injection volumes of 1200 BWPD. Current injection pressure on the reservoir continues to threaten contamination of public water supply and is in direct violation of the Clean Water Act which carries a fine up to $10,000.00 per occurrence and a criminal sentence of up to 10 years, we are faced with imminent harm and irreparable damages voluntarily conspiring with GCM who as Operator of the Pleasant

Home Field, is knowingly violating state and federal laws.

25. Unbeknownst to Plaintiffs and prior to being solicited this Alabama investment, Billingsley and GCM has a history of fraudulent activities, including but not limited to, (1) willfully violating oil and gas regulatory laws in the State of Alabama for safety and well maintenance and (2) fraudulently offering unregistered securities to unsuspecting investors not located in the same state where GCM and Billingsley operate oil and gas well investments. Out-of- state investors cannot inspect GCM's fraudulent billing and cash call practices before the investor loses their investment by foreclosure or some other redirect or assignment of working interest scheme. GCM and Billingsley made misrepresentations to Plaintiffs which were material, false and have caused damage to Plaintiffs. Those misrepresentations discussed in the previous paragraphs were made to Plaintiffs with the specific intent that the representations and omissions be relied upon by Plaintiffs.

26. Plaintiffs, according to GCM, is now delinquent on required payments due. Consequently, on or about October 1, 2014, GCM instructed Defendant Genesis to credit all production payments related to Plaintiffs' Interest directly to GCM's account. Defendant Genesis has been collaborating with GCM and has unilaterally stop payments to Plaintiffs without Plaintiffs' consent. This fraudulent scheme which started before Plaintiffs' bankruptcy has continued post-bankruptcy causing additional losses to Plaintiff and imminent harm. Defendant Billingsley and GCM are currently threatening to pursue similar confiscation actions as they did against Plaintiff in December 2013. See Exhibit C attached hereto and incorporated and referenced herein.

**VII.**
**CAUSES OF ACTION**

**A. FRAUD AND FRAUDULENT INDUCEMENT**

27. Plaintiffs incorporate by reference each of the facts set forth above.

28. The representations made by Defendant GCM and Billingsley to Plaintiff were false, material, and were made by each with the intention that Plaintiffs rely on those false and material misrepresentations. Billingsley solicited securities investments to TI and TOI's

Certified Document Number: 63136874 - Page 9 of 17

owner, Robert Hynds, by intrastate telephone calls between Texas and Alabama offering profit participation in oil and gas ventures promising a "great" business opportunity. Plaintiffs did rely on those representations to his detriment. Plaintiffs have been damaged by the false representations and seek unliquidated damages within the jurisdictional limits of this court.

29. Plaintiff specially alleges Defendants did not "deal" with Plaintiff in "good faith" in that while informing Plaintiff that Defendant GCM was soliciting securities investments in wells in the Pleasant Home Field, Defendant GCM and Billingsley did not inform Plaintiffs via sales brochure, prospectus or subscription agreements that the wells in question had serious problems with a tremendous amount of dangerous salt water that were exceeding their daily Alabama Oil and Gas Board regulatory limits for storage, injection and disposal.

30. Plaintiff a l s o specially alleges Defendants did not misrepresented and intentionally did not disclosed that GCM had been found guilty of the Alabama Oil and Gas Board in 2011of contamination of fresh water in the Pleasant Home Field, unreported spills at salt water disposal wells , unlawful burial of tank bottoms and files, spills and blowouts in the same field Billingsley was soliciting to Plaintiffs as great opportunities in 2013. Defendant GCM and Billingsley did not inform Plaintiffs that GCM had intentionally filed false statements to the Alabama Oil and Gas Board regarding their oil contamination requirements or the regulatory violations and fines issues against GCM related to the wells and Pleasant Home Field that Billingsley solicited as a great working interest investment to Plaintiffs in January 2013. Plaintiff relied on Billingsley to his detriment and has been damaged and fraudulently bilked out of additional money for fake invoices, well recompletions call calls for work never performed on Plaintiffs' wells.

31. Plaintiff further alleges that Defendants have not complied with the terms of the Joint Operating Agreement ("JOA") dated June 26, 2008 between Gulf Coast Mineral, LLC. as Operator and MARC et al, as Non-Operator, A.A.P.L. FORM 610-1982, and subject to that certain Participation Agreement dated October 23, 2009, by and between GCM and Westrock or Nominee Land Corp by unlawfully collaborating with Genesis to withholding Plaintiffs production proceeds unilaterally without

Certified Document Number: 63136874 - Page 10 of 17

Plaintiffs' express written consent. Defendant GCM and Gary Billingsley also has sold wells listed under the June 26, 2008 JOA that Plaintiffs have a 49% Interest in and Defendant GCM and Billingsley have concealed these sales transactions from Plaintiffs and have not paid Plaintiffs their 49% of the proceeds from the sale of those wells.

32. Plaintiffs alleges that as a consequence of the actions and/or inactions of Defendants that Plaintiffs has been deprived of the benefits of their Interest and benefits of their loan agreement by which they purchased the Interest, deprived of the opportunity to make lawful arrangements to bring the indebtedness actually owed to current status, and/or deprived of an opportunity to make arrangements to be able to refinance their loan with a lender based being wrongfully and fraudulently held in mortgage default status, and of destroying the benefit of the profit generated from production sales by netting out inflated invoices, false capital call requirements and being charges well expenses on unrelated wells not owned by Plaintiff. See Plaintiff's Affidavit in Support.

33. Plaintiff alleges and has reason to believe there is sufficient circumstantial evidence to support the proposition that the actions and inactions of Defendants were at least gross negligence, if not intentional, in an effort to deprive Plaintiff of his 49% Working Interests, and that Defendants have jointly and severally conspired to deprive Plaintiffs of their right to sales proceeds from production sold by Defendant Genesis on wells in the Pleasant Home Field.

### B.   WRONGFUL FORECLOSURE DUE TO FRAUD

34. Plaintiffs incorporate by reference each of the facts set forth above.

35. Billingsley and GCM have unilateral and fraudulently instructed Defendant Genesis to stop paying Plaintiffs' production payments on their investment Interest related to the sales proceeds generated from the Pleasant Home field in order to oppress Plaintiff as a 49% minority Interest investor and wrongfully force Plaintiffs to default on their secured mortgage in order to sale Plaintiffs' Interest by foreclosure. Defendant Genesis has knowingly, willfully and purposefully collaborated with Defendant GCM and

Certified Document Number: 63136874 - Page 11 of 17

Billingsley without notification to Plaintiffs or consent from Plaintiffs. Defendants Billingsley, despite contractual Working Interest Agreements and the June 26, 2008 JOA, simply notified Defendant Genesis to forward all of Plaintiffs' production proceed payments to Defendant GCM.  Without questions, Genesis stop paying Plaintiffs based on instructions from Billingsley. Defendants have jointly and severally conspired to deprive Plaintiffs of their right to sales proceeds from production sold by Defendant Genesis on wells in the Pleasant Home Field.

36. Plaintiffs have no adequate remedy at law.  The losses suffered by Plaintiffs as a result of a  foreclosure on its Interest cannot be calculated due to the difficulty imputing a value on a person's inability to obtain financing for another mortgage, resulting in an inability to refinance Plaintiffs' mortgage that secures his Interest. Additionally, Plaintiffs have no adequate remedy to reverse a foreclosure sale and set it aside except by a court ordered injunction or Rescission of Sales and/or if the court invokes the equitable remedy of constructive trust.  Plaintiffs seeks a constructive trust on any attempted sale by Defendants and judgment that the sale be declared void.

### C.  BREACH OF FIDUCIARY DUTY AND MINORITY WORKING INTEREST HOLDER OPPRESSION

**37.**  Plaintiffs incorporate by reference each of the facts set forth above.

**38.** A fiduciary relationship existed between Plaintiffs and Defendants.  Defendants breached their fiduciary duties to plaintiffs, including their duties of loyalty, care and disclosure, by asserting dominion over distributions from Defendant Genesis.  Defendants GCM and Billingsley also breached their duties by usurping corporate opportunities, by self-dealing and by failing to convey all relevant information to Plaintiffs.

**39.** Defendants have breached their duties to Plaintiffs by, among other things, not disclosing to Plaintiffs all fact material to each decision made by GCM and Billingsley from which Defendants

Certified Document Number: 63136874 - Page 12 of 17

were receiving benefits, participating in and, benefits from decisions that were materially, substantially and /or procedurally unfair to Plaintiffs, and not providing the minority working Interest holder the same benefits that were provided to Defendants.

**40.** Defendants' wrongful actions resulted in Plaintiffs' damages and a wrongful benefit to Defendants for which Plaintiffs seek actual damages, equitable remedies including forfeiture, punitive damages and attorney's fees.

### D.  BREACH OF THE WORKING INTEREST AGREEMENT

41. Plaintiffs incorporate by reference each of the facts set forth above.

**42.** Working Interest Agreement and the Joint Operating Agreement ("JOA") dated June 26, 2008 between Gulf Coast Mineral, LLC. as Operator and MARC et al, as Non-Operator, A.A.P.L. FORM 610-1982, and subject to that certain Participation Agreement dated October 23, 2009, by and between GCM and Westrock or Nominee Land Corp constituted valid, enforceable contracts, and Plaintiffs are proper parties to sue for breach of those contracts.

**43.** The Plaintiffs performed their obligations under the Agreements and paid the requisite investment amounts to become a 49% Working Interest investor, yet the Defendants and GCM and Billingsley breached the contract. Defendants' wrongful actions resulted in Plaintiffs' damages and a wrongful benefit to Defendants for which Plaintiffs seek actual damages, equitable remedies including forfeiture, punitive damages and attorney's fees.

### VIII.

### APPLICATION FOR TEMPORARY RESTRAINING ORDER AND INJUNCTIVE RELIEF

44. Plaintiffs' application for a temporary restraining order is authorized by Chapter 65 of the Texas Civil Practice & Remedies Code.

45. Here, based upon reasonable information and belief, Plaintiffs assert that Defendants have intent to foreclose on Plaintiffs' Interest and selling Plaintiff's collateral listed in Exhibit A & B attached and referenced herein. If the pending sale of any of Plaintiff's Interest is consummated , Plaintiffs' ability to obtaining what was promised them in terms

of their rights to participate in the current and future profits from the production of oil and gas and right to sell their Interest in the future will have been significantly decreased and impaired.  Accordingly, Plaintiffs ask this Court to grant a temporary restraining order placing any sales proceeds from the sale of Plaintiff's working Interest and any related proceeds from production into escrow accounts, or in a constructive trust for the benefit of Plaintiffs.

46. A probable right to relief exists because Plaintiffs are the investor and 49% owner of the Interest in the Pleasant Home Field, and if they had not been induced by GCM and Billingsley, told untruths and half truths about the impaired production of the five wells and the excessive amount of water  being produced from the current wells in production and existing Alabama Oil and Gas Board fines and violations related to the refusal to well maintenance, cleanup and waste disposal in Pleasant Home Field prior to Plaintiffs investment in the field, Plaintiff would not have made an investment in the fields.

47. Because Defendant's Gary Billingsley and GCM have grossly misrepresented the Working Interest investment in the Pleasant Home Field and their intent to operate the related wells with full disclosure, truthful accounting and adherence to Alabama Oil & Gas Board regulations, Defendants have unlawfully and without authorization exercised control over Plaintiff's working interest to the exclusion of, or inconsistent with Plaintiffs' rights as investors with the intent to deprive by attempted foreclosure of Plaintiffs' Interest.

48. Further, adequate remedy at law does not exist and Plaintiffs face imminent harm and irreparable injury without an injunction paying sales and production proceeds into a trust or into escrow.  Only an escrow of  the sales and production proceeds or the placement of a constructive trust on them will guarantee that those funds are available for disbursement in a manner consistent with Plaintiffs' expectations as an investor based upon the representations made to Plaintiff's when Billingsley and GCM first solicited the Working Interest Investment in Houston, Texas and in Alabama when Plaintiff was asked to take site visits of the Pleasant Home Field wells.

49. Therefore , an adequate remedy at law does not exist and Plaintiffs face imminent harm and irreparable injury. According, Plaintiffs request an injunction guaranteeing an escrow of funds or a constructive trust be placed on the sale proceeds and production proceeds generated from sales to Genesis.

*Plaintiffs' Original Petition and Application for TRO and Injunction*

Certified Document Number: 63136874 - Page 14 of 17

50. Plaintiffs are willing to post a reasonable bond in order to obtain a temporary restraining order.

## IX
## REQUEST FOR HEARING ON TEMPORARY RESTRAINING ORDER

51. Plaintiffs would further pray for this Court to set a hearing on Plaintiffs' Application for Temporary Restraining Order and subsequent injunctive relief in this matter.

## X.
## REQUEST FOR TEMPORARY INJUNCITON

52. Plaintiffs ask the Court to set their application for temporary injunction for a hearing, and after the hearing, issue a temporary injunction against Defendants.

## XI.
## ADDITIONAL RELIEF REQUESTED

53. Defendants have instituted proceeds to take Plaintiffs' working interest based on what is believed to be an invalid Side Agreements . Plaintiffs have no adequate remedy at law. Plaintiff would ask the court to issue a temporary restraining order and/or temporary injunction prohibiting Defendant Genesis from interfering  or excluding Plaintiffs from its Interest  and allocation for production proceeds from the Pleasant Home Field wells in this case.

54. Plaintiffs hereby makes a request for production for all documentation proof of their ownership of working interest, invoices for request of amount of LOE from the wells and sale of collateral from  the working interested purchased or sold as a part of the 2008 JOA and their authorization from the owner of the indebtedness to institute a foreclosure process against Plaintiff.

55. Declare that Defendant Genesis do not have standing to redirect Plaintiffs' 49% working interest proceeds from the sale of oil and gas from the Pleasant Home Field to Defendant GCM without Plaintiffs' express instructions and written consent to Genesis.

56. In the alternative and /or in addition, <u>Plaintiffs seeks a Temporary Restraining  Order</u> and subsequently a Temporary Injunction against Defendants prohibiting them from:

A. Taking any action that might damage, modify, secret, and/or destroy any document that represents or embodies information regarding the Plaintiff's Interest;

B. Doing or taking any action that might sell, transfer, assign, encumber, or in any other manner alienate any interest in and to the mortgage, Plaintiffs' Interest or the Pleasant Home Field, except as specifically authorized by an order of this Court,

Certified Document Number: 63136874 - Page 15 of 17

after a hearing and an opportunity for Plaintiffs to present arguments and/or evidence in opposition to such action;

C. Doing any one or more of the above acts or omissions through a third-party and/or taking all reasonable and lawful means to prohibit a third-party from doing any one or more of the above acts or omissions, even if that means notifying the appropriate law enforcement personnel that such third-party or third-parties are about to act or engaged in such act or acts.

D. Selling or reconveying title to Plaintiff's Interest; and

E. Doing or taking any action that might destroy, modify, encumber, transfer, or otherwise changing the value of Plaintiff's Interest;

57. Plaintiffs specifically request the Court to sign a Temporary Restraining Order, to be matured into a Temporary Injunction against Defendants with a bond set by Court in a minimal amount.

## XII.
## ATTORNEYS FEES & COSTS

58. As a result of the actions of the Defendants, Plaintiffs was forced to defend themselves in court. Plaintiffs, by and through their attorney of record, seek to recover reasonable attorney fees, litigation (including mediation) expenses, expenses of any sale of the collateral, and costs of suit against Defendants for having been compelled to bring this request for relief based upon the actions and inactions of Defendants, jointly and/or severally. Plaintiffs a r e entitled to an award of attorney fees and costs under the Texas Civil Practices and Remedies Code Section 38.001 related to the breach of contract claims.

## XIII.
## PRAYER

WHEREFORE, Plaintiffs pray that Defendants be cited to appear and answer herein, and that upon final trial, and after the issuance of a temporary restraining order and a temporary injunction, Plaintiffs be awarded the following from Defendants, jointly and severally:

59. Actual damages;

60. Any and all remedies allowed by and applicable to Plaintiff's actions, as described herein above for their actions as more fully stated in Plaintiffs' Petition;

Certified Document Number: 63136874 - Page 16 of 17

61. Any and all other remedies afforded by Texas law, including but not limited to, costs of court and costs of suit;

62. Prejudgment and post-judgment interest

63. Reasonable attorney fees

64. Setting aside the attempted sales of Plaintiff's Interest

65. Injunctive relief against Defendants (temporary and permanent) prohibiting interference with Plaintiff s possession, title, occupancy or production proceeds of the Working Interest in Pleasant Field Home.

66. Injunctive relief ordering Defendants to appear at a temporary injunction hearing producing documentation of disclosure of prior history of well performance, Alabama Oil and Gas Board violations and fines prior to Plaintiff's solicited securities offering in Working Investment and related documents disclosed to Plaintiffs.

67. Injunctive relief ordering Defendants to appear at a temporary injunction hearing producing documentation of all Working Interest secured by certain liens and subject to a certain Joint Operating Agreement ("JOA") dated June 26, 2008 between GCM, as Operator and MARC et al, as Non-Operator, A.A.P.L. FORM 610-1982 subject foreclosure and the authority under which the foreclosure is to be instituted.

68. All other relief and further relief, at law and in equity, to which Plaintiffs may be justly entitled as the Court deems appropriate.

Respectfully Submitted,

**L A W   O F F I C E OF VICTOR D. WALKER, P.C.**

_/s/ Victor D. Walker_

**Victor D. Walker**
**SBN. 00789775**
**One Riverway, Suite 1700**
**Houston, TX 77056**
**Tel: (713) 724-5300**
**Fax (713) 493-2560**
**Email: vwalker@walkersecuritieslaw.com**
**ATTORNEY FOR PLAINTIFFS**
**TRYALL OMEGA, INC. AND TRYALL, INC.**

*Plaintiffs' Original Petition and Application for TRO and Injunction*

17



I, Chris Daniel, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   November 20, 2014

Certified Document Number:      63136874 Total Pages:  17

Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com**